```
                                    FILED                    ORIGINAL
                               IN CLERK'S OFFICE              b & F
UNITED STATES DISTRICT COURT   U.S. DISTRICT COURT, E.D.N.Y.
EASTERN DISTRICT OF NEW YORK    ★    OCT 04 2005    ★        C/M
```

------------------------------------------------x

JOSE HUAMAN, et al.,

        Plaintiffs,

  -against-

AMERICAN AIRLINES, INC., et al.,

        Defendants.

------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 00-CV-6336 (FB) (MDG)

*Appearances:*

*For the Plaintiffs:*
MICHAEL G. O'NEILL, ESQ.
301 Vesey Street, Suite 301
New York, NY 10007

*For Defendant American Airlines, Inc.:*
CHRISTOPHER P. REYNOLDS, ESQ.
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178

RENE M. JOHNSON, ESQ.
Morgan, Lewis & Bockius, LLP
502 Carnegie Center
Princeton, NJ 08540

*For Defendant Robert Kolsch:*
AMY L. VENTRY, ESQ.
Nixon Peabody, LLP
990 Stewart Avenue
Garden City, NY 11530

*For Defendants Vito Martino & Michael Miglino:*
MARY ELLEN DONNELLY, ESQ.
Putney, Twombly, Hall & Hirson, LLP
521 Fifth Avenue
New York, NY 10175

*For Defendant Donald Smith:*
H.P. SEAN DWECK, ESQ.
The Dweck Law Firm, LLP
230 Park Avenue, Suite 416
New York, NY 10169

**BLOCK, District Judge:**

Plaintiffs José Huaman ("Huaman") and Karl Tinto ("Tinto") assert claims of employment discrimination against defendants American Airlines, Inc. ("American"), Robert Kolsch ("Kolsch"), Vito Martino ("Martino"), Michael Miglino ("Miglino") and Donald Smith ("Smith"). Both plaintiffs bring claims under 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-703 ("NYCHRL"); in addition, Huaman brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").

Huaman, who is Hispanic, and Tinto, who is black and from the West Indies, each seek to pursue two theories of discrimination: (1) hostile environment and (2) disparate treatment. In addition, Huaman seeks to pursue the theory that defendants retaliated against him for opposing unlawful employment practices.

American and Kolsch have moved for summary judgment on various grounds. For the reasons stated in open court on September 28, 2005, as recapitulated and elaborated in this Memorandum and Order, the motion is granted in part and denied in part.

## I. HOSTILE ENVIRONMENT

Plaintiffs' hostile environment claims present four issues: (1) whether they have offered sufficient evidence in support of their *prima facie* case; (2) whether they have offered sufficient evidence to hold Kolsch individually liable under the NYSHRL and

NYCHRL;[1] (3) whether any of their claims under § 1981, the NYSHRL or the NYCHRL are barred by the statute of limitations;[2] and (4) whether the claims under the NYSHRL and NYCHRL are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188.

## A. *Prima Facie* Case

To survive a motion for summary judgment, a plaintiff alleging a hostile work environment must come forward with sufficient evidence to show "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). Assuming a hostile environment is demonstrated, the plaintiff must then show

---

[1] Plaintiffs do not seek to hold Kolsch individually liable under Title VII or § 1981.

[2] Defendants do not argue that Huaman's claims under Title VII are untimely. Huaman filed a charge with the EEOC on March 17, 1997, alleging that he was subjected to unlawful discrimination through February 26, 1997; this was well within the 300-day time limit for filing the charge. *See Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) ("An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." (citing 42 U.S.C. § 2000e-5(e))). The EEOC issued a right-to-sue letter on April 5, 2001, and Huaman amended the complaint to raise his Title VII claim on June 28, 2001; this was within the 90-day time limit for bringing the claim in federal court. *See Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("[A Title VII] suit must be commenced not more than 90 days after receipt of the right-to-sue letter." (citing 42 U.S.C. § 2000e-5(f))).

3

"that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* at 373.

"The standards for a hostile work environment claim under Title VII, § 1981, NYSHRL and NYCHRL generally are the same." *Citroner v. Progressive Cas. Ins. Co.*, 208 F. Supp. 2d 328, 339 (E.D.N.Y. 2002) (citing *Whidbee v. Garzarelli Food Specialties*, Inc., 23 F.3d 62, 69 (2d Cir. 2000)); however, the standards for imputing liability to the employer are different. *See EEOC v. Rotary Corp.*, 297 F. Supp. 2d 643, 665 (N.D.N.Y. 2003).

### 1. *Existence of Hostile Environment*

Leaving aside for the moment the timeliness issue as to both Huaman and Tinto, plaintiffs have offered sufficient evidence – principally a string of racially and ethnically derogatory epithets used by Kolsch on numerous occasions over a period of more than two years – to create an issue of fact as to whether, objectively and subjectively, "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

According to Huaman's sworn declaration, Kolsch used many ethnically derogatory epithets when speaking to him and another Hispanic electrician: "cockroaches," "Tijuana cab drivers," "the Julio brothers," "bondo brothers," and "hose-a [i.e., José] and hose-b." Huaman Dec. ¶ 7; he also referred to Huaman as a "fuckin' Puerto Rican" – even though Huaman is not Puerto Rican – "anywhere from ten times a week to several times a day" for more than two years. *Id.* ¶ 8. Huaman also attests that Kolsch made anti-

4

Hispanic comments (such as saying he didn't speak "spic" and asking Huaman, "What kind of fuckin' Puerto Rican are you, you don't carry a knife?" *Id.* ¶ 9); almost always assigned Huaman to work with another Hispanic electrician; and generally gave the undesirable assignments to minority workers. In addition, Kolsch kept a picture of Adolf Hitler in his office and had the name of a German tank division ("Totenkompf" or "Death Head") on the bug shield of his car.³

With respect to Tinto, the epithets directed at him were not as numerous as those directed at Huaman, but are nonetheless sufficient to survive summary judgment. In his sworn declaration, Tinto attests that he heard Kolsch refer to him as a "West Indian piece of shit" on "many occasions." Tinto Dec. ¶ 6. Moreover, "[r]emarks targeting members of other minorities . . . may contribute to the overall hostility of the working environment for a minority employee." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). In addition, Tinto, like Huaman, attests that Kolsch assigned minorities to work together and on less desirable jobs.

2. *Imputing Liability to Employer*

a. **Federal Law**⁴

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807

---

³Since Huaman admits he did not know what "Totenkompf" referred to at the time, the Court does not consider that fact, but includes it for the sake of completeness.

⁴"The standards governing employer liability for a hostile work environment claim brought under § 1981 and Title VII are the same." *Marvelli v. Chaps Comm. Health Ctr.*, 193 F. Supp. 2d 636, 654 n.4 (E.D.N.Y. 2002).

5

(1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). A harassing employee is deemed a supervisor when "the power – economic *or otherwise*, of the harassing employee over the subordinate victim given by the employer to the harasser – enabled the harasser, or materially augmented his or her ability, to create or maintain the hostile work environment." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 125 (2d Cir. 2003) (citing *Ellerth*, 524 U.S. at 763).

When the harassing employee takes a "tangible employment action" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," vicarious liability is automatic. *Ellerth*, 524 U.S. at 761. "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages." *Faragher*, 534 U.S. at 807.

The *Faragher/Ellerth* defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* The employer bears the burden of proving these elements; therefore, summary judgment on the defense is appropriate "only if the evidence in favor of the [defendant] is so overwhelming that the jury could rationally reach no other result." *Fairbrother v. Morrison*, 412 F.3d 39, 53 (2d Cir. 2005) (citation and internal quotations omitted).

Here, plaintiffs have offered sufficient evidence – namely, Kolsch's authority to distribute and oversee his crew's work assignments – that his position as crew chief "enabled or materially augmented the ability [] to create a hostile work environment for his or her subordinates," thereby subjecting American to vicarious liability. *Mack*, 326 F.3d at 125 (concluding, as a matter of law, that "mechanic in charge" was supervisor of other mechanics). Plaintiffs have not shown, however, that Kolsch's actions resulted in any tangible employment action; therefore, American is entitled to raise the *Faragher/Ellerth* affirmative defense.

Issues of fact regarding the adequacy of American's investigation and corrective measures, and of the reasonableness of plaintiffs' actions, preclude summary judgment on the affirmative defense. Both Huaman and Tinto attest that they complained about Kolsch's behavior to defendant Martino, one of their department managers, but that no corrective action was taken. *See* Huaman Dec. ¶¶ 18-19 ("Not only did Martino witness Kolsch's use of abusive racial epithets, but on a number of occasions in 1995 and 1996, I attempted to discuss Kolsch's harassment with Martino. . . . I did manage to tell Martino that Kolsch was harassing us and giving us the worst assignments."); Tinto Dec. ¶ 10 ("I complained about Kolsch's behavior to Vito Martino. I told Martino that Kolsch was abusing us, meaning the minorities, and using racially insulting language to and about us.").[5] American later reprimanded Martino, along with defendant Miglino, another

---

[5] American and Kolsch argue that Tinto's declaration contradicts his deposition testimony on this point. "It is well-settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987). Here, however, the Court perceives no contradiction. Tinto's deposition testimony simply

7

manager, for failing to take appropriate action to curb Kolsch's behavior. Moreover, Huaman also filed a written complaint with Human Resources, which investigated the complaint, but concluded that no unlawful harassment had occurred; if a reasonable jury concludes that such harassment, in fact, occurred, they could also conclude that American failed to use reasonable care to prevent and correct it.

**b. State and Local Law**

"Under § 296 of the NYSHRL and § 8-107 of the NYCHRL an employer cannot be held liable . . . for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Heskin v. Insite Advertising, Inc.*, 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005) (citations and internal quotation marks omitted). "Condonation contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *Id.* (citation and internal quotation marks omitted). Here, there is sufficient evidence – in particular, evidence that, prior to American's formal investigation, Martino was aware of Kolsch's behavior, but took no action – for a reasonable jury to find condonation.

**B. Individual Liability**

Because the NYSHRL makes it unlawful to "aid, abet, incite, compel or coerce" unlawful discrimination, N.Y. Exec. Law. § 296(6), "a defendant who actually

---

establishes that he and Martino had many conversations "about the fact that [Tinto] felt that Kolsch was not treating [him] properly." Tinto Dep. at 177. At no point did Tinto admit that the conversations did not include Kolsch's alleged racial and ethnic harassment. Moreover, as mentioned in the text, defendants bear the burden on summary judgment of presenting overwhelming evidence that such conversations did not take place; even leaving aside Tinto's declaration, his deposition testimony falls short of that standard.

participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington*, 524 U.S. at 754, *and Faragher*, 524 U.S. at 807; *see also Feingold v. New York*, 366 F.3d 138, 157-58 & n.19 (2d Cir. 2004). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL." *Feingold*, 366 F.3d at 158. There is sufficient evidence that Kolsch actually participated in the discriminatory conduct to support an aiding-and-abetting theory of individual liability under the NYSHRL and NYCHRL.

## C. Statutes of Limitations

Claims of discrimination in the conditions of employment under § 1981 are subject to a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004) (citing 28 U.S.C. § 1658(a)). "Discrimination claims under the NYSHRL and NYCHRL are subject to three-year statutes of limitations." *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004) (citing N.Y. C.P.L.R. 214(2) and N.Y.C. Admin. Code § 8-502(d)). For hostile environment claims, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," unless the act within the filing "had no relation to the acts [outside the period], or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).[6]

---

[6]Although *Morgan* involved Title VII claims, it also applies to claims under § 1981, the NYSHRL and the NYCHRL. *See Milani v. IBM Corp.*, 322 F. Supp. 2d 434, 454 (S.D.N.Y. 2004) (applying *Morgan* to NYSHRL and NYCHRL claims); *Staff v. Pall Corp.*,

9

Since plaintiffs' complaint was filed on October 27, 2000, any hostile environment claims under § 1981 are time-barred unless at least one act contributing to the claim occurred after October 27, 1996. Similarly, any hostile environment claims under the NYSHRL and NYCHRL are time barred unless at least one act contributing to the claim occurred after October 27, 1997.

*1. § 1981*

Plaintiffs have offered sufficient evidence that the allegedly hostile environment existed virtually without interruption though at least February or March 1997. *See* Huaman Dec. ¶ 10 ("This treatment began from the time I started at JFK [Airport] and continued, constantly and almost every day, until I complained to Human Resources in February, 1997."); Tinto Dec. ¶ 11 ("The behavior of Kolsch . . . lasted until about March, 1997.").[7] Thus, plaintiffs' hostile environment claims under § 1981 are not time-barred.

*2. NYSHRL and NYCHRL*

As mentioned above, the bulk of the acts allegedly constituting a hostile environment took place before March 1997, outside the three-year limitations period;

---

233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002) (applying *Morgan* to § 1981 and NYSHRL claims).

[7]American and Kolsch again argue that Tinto's declaration contradicts his deposition testimony. They argue that Tinto testified that "*all* the comments about which he complains took place more than five years prior to his testimony – or, at the latest, in April 1996." Defs.' Reply Mem. at 7-8; however, the testimony they rely on ("Q. It was more than five years ago? A. I would say so." Tinto Dep. at 134) refers to a single incident. Tinto then went on to list other incidents occurring "in the mid-'90s," "in the mid-'90s somewhere," "[b]efore this [February] '97 incident," and "pre-'97." Tinto Dep. at 160-68. This testimony is insufficient to demonstrate that no act contributing to the allegedly hostile environment took place after October 1996.

because Huaman transferred to Air Freight between April and September 1997, he was not exposed to a hostile environment during that period. He has attested, however, that on November 18, 1997 (after he had voluntarily transferred back to Kolsch's crew), he and a white electrician came in from the cold to warm up, and that Kolsch saw them and criticized Huaman – but not the white electrician – for being inside. When Huaman explained that he had come inside to warm up, Kolsch told him that he "should just transfer to a warmer climate." Huaman Dec. ¶ 36. Given Kolsch's past history with Huaman, a jury could reasonably conclude that Kolsch was singling Huaman out based on his ethnicity, that, despite American's investigation and Huaman's transfer, the comment was part of the same hostile environment that had begun several years earlier; therefore, defendants cannot establish that, as a matter of law, Huaman's hostile environment claims under the NYSHRL and NYCHRL are time-barred. *Cf. Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998) ("Discriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender.").

Tinto, however, admits that, with respect to his claims, "[e]verything got cleaned up" after March 1997, Tinto Dep. at 235; therefore, his claims under the NYSHRL and NYCHRL are time-barred.

**D. Preemption under the RLA**

As pertinent here, the RLA "requires the establishment of arbitration panels known as 'Adjustment Boards' to deal with disputes between employers and employees

11

in the airline industry." *Gay v. Carlson*, 60 F.3d 83, 86 (2d Cir. 1995) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)). "Disputes that are spawned by grievances or by interpretations or applications of [collective bargaining] agreements ["CBAs"], known as 'minor disputes,' must be resolved exclusively under the arbitration procedures established by the Railway Labor Act." *Id.* at 87. By contrast, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Norris*, 512 U.S. at 256.

The right to be free from discrimination arises under the NYSHRL and NYCHRL and is, therefore, independent of the CBA. As a result, claims under those statutes are not preempted by the RLA. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 1999 WL 64436, at *3 (S.D.N.Y. Feb. 9, 1999) (holding that a claim under the NYSHRL and NYCHRL "that focuses on the issue of an employer's discriminatory animus does not necessitate an interpretation of the CBA such that preemption is required.").

## II. DISPARATE TREATMENT

To make out a claim of disparate treatment, plaintiffs must show that they (1) are members of a protected class, (2) were qualified for their positions, and (3) suffered adverse employment actions (4) under circumstances giving rise to an inference of discrimination. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)). There is no dispute that elements (1) and (2) are satisfied.

Plaintiffs argue that "Kolsch's harassment constituted an adverse employment decision," Pls.' Mem. of Law in Opp. at 8; however, as the Supreme Court

12

explained in *Morgan*, "[h]ostile environment claims are different in kind from discrete acts" constituting adverse employment actions "such as termination, failure to promote, denial of transfer, or refusal to hire." 536 U.S. at 114-15. Thus, "a hostile work environment cannot alone be considered an adverse employment action lest every ... harassment claim would give rise to a disparate treatment claim and vice-versa." *Sexton v. Runyon*, 1997 WL 704910, *4 (N.D. Ill. Nov. 10, 1997). As set forth above, plaintiffs' hostile environment claims survive summary judgment; the Court sees no reason to allow plaintiffs to pursue identical, duplicative claims under the guise of "disparate treatment."

Other acts alluded to by plaintiffs – threats, job assignments and excessive monitoring of Huaman's work – do not amount to adverse employment actions. *See Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions."); *Winiarski v. State Dep't of Pub. Health*, 273 F. Supp. 2d 189, 193 (D. Conn. 2003) (no adverse employment action as a matter of law where "the tasks [plaintiff] was given were within [her] job description"); *cf. Ellerth*, 524 U.S. at 761 ("reassignment *with significantly different responsibilities*" may be adverse employment action (emphasis added)). American's alteration of the times and days of the shifts for which electricians could bid applied to all electricians and, therefore, did not occur in circumstances giving rise to an inference of discrimination.

### III. RETALIATION

"A plaintiff claiming retaliation must prove: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment

13

action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 112 (2d Cir. 2000).

It is undisputed that Huaman engaged in protected activity by complaining about Kolsch's behavior and filing an EEOC charge in 1997, and by filing the present lawsuit in 2000. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999) ("There is no disagreement that Richardson engaged in protected activity when she complained to supervisors about harassment, filed her EEOC charge and filed her lawsuit."). It is also undisputed that American was aware of these activities.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson*, 180 F.3d at 446). Huaman has offered sufficient evidence of adverse employment actions – such as the denial of overtime – to allow a reasonable jury to conclude that he endured such a change. *See Petrario v. Cutler*, 187 F. Supp. 2d 26, 33 (D. Conn. 2002) (holding that denial of overtime "fall[s] within the traditional definition of 'adverse employment actions.'").

"Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. Here, the allegedly adverse employment actions were too remote in time from Huaman's 1997 internal complaint and EEOC charge to support an inference of causation, *see Greco v. County of Nassau*, 146 F.

14

Supp. 2d 232, 245 (E.D.N.Y. 2001) (holding two-year difference to be "far too remote in time to establish any inference regarding a causal connection"); however, they took place soon enough after the filing of the complaint in this Court to allow a reasonable jury to infer a causal connection.[8] While the Court recognizes that the complaint is simply a later incarnation of Huaman's earlier protected activity, it is different in nature; while an EEOC charge might result in an informal process of voluntary settlement and conciliation efforts, the filing of a civil complaint forces the employer into litigation and exposes it to possibly significant monetary and other liability. This difference in import could allow a reasonable jury to conclude that, while the earlier protected activity triggered no retaliatory response, the filing of the lawsuit did.[9]

---

[8] Some of the allegedly adverse employment actions took place prior to the filing of the complaint; there can be no causal connection between the filing of the complaint and such actions. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (that decision to transfer was made before employer knew plaintiff had filed suit "demonstrated conclusively the lack of causation between the filing of [plaintiff's] lawsuit and [the employer's] decision."). Huaman's retaliation claim is, therefore, limited to allegedly adverse employment actions that occurred after American became aware of the filing of the complaint in this Court.

[9] The Court has considered the cases cited by American in its letter brief of September 28, 2005. In *Clark*, the Supreme Court held that an excessive temporal gap between the filing of an EEOC charge and an adverse employment action was not cured by the issuance of a right-to-sue letter. *See* 532 U.S. at 273. In *Reiter v. Metropolitan Transp. Auth.*, 2002 WL 31190167, at *9 (S.D.N.Y. Sept. 30, 2002), the court held that an excessive temporal gap between the filing of an EEOC charge and an adverse employment action was not cured by a subsequent EEOC charge. In *Wilson v. Woodward Iron Co.*, 362 F. Supp. 886, 891 (N.D. Ala. 1973), the court found that "it is not reasonable to think [an employer] would have waited for the two and a half years between the filing of the [EEOC] charge in 1967 and . . . 1970" to retaliate. The Court agrees with each of these propositions; none of them detracts from the Court's conclusion that the filing of a lawsuit is a separate protected activity sufficiently different in nature from the filing of an EEOC charge to justify a reasonable inference that the former might trigger retaliation even if the latter did not.

## IV. CONCLUSION

The motion for summary judgment is granted with respect to all disparate treatment claims. In addition, the motion is granted with respect to Tinto's hostile-environment claims under the NYSHRL and NYCHRL. In all other respects, the motion is denied.

Thus, both plaintiffs may pursue hostile-environment theories under § 1981; Huaman may also pursue a hostile-environment theory under Title VII, the NYSHRL and the NYCHRL.[10] On those claims, the following issues of fact remain for trial:

- Whether plaintiffs were subjected to a hostile work environment; that is, whether, objectively and subjectively, their "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment," *Harris*, 510 U.S. at 21 (citation and internal quotation marks omitted);

- Whether the conduct constituting the allegedly hostile work environment is imputed to American;

- Whether Kolsch is individually liable under the NYSHRL or NYCHRL; and

- With respect to defendants' statute-of-limitations defense to Huaman's claims under the NYSHRL and NYCHRL, whether any acts occurring within three years of the filing of the complaint were part of the allegedly hostile work environment.

---

[10]As explained in this Memorandum and Order, the claims under the four statutes largely overlap; the principal differences are: (1) the applicable statute of limitations, (2) the standard for employer liability, and (3) the ability to hold individuals liable. With respect to damages, the principal differences are (1) that, under Title VII, compensatory and punitive damages are capped, *see* 42 U.S.C. § 1981a; and (2) that, under the NYSHRL, attorney fees are not recoverable. *See Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 166 (E.D.N.Y. 1999).

In addition, Huaman may pursue a retaliation claim under all four statutes. On that claim, the issue to be tried is whether Huaman suffered any adverse employment actions in retaliation for filing the present lawsuit.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
September 29, 2005